UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Charlene Silsby,

                              Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-585 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 15, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 12.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

2

Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the ALJ did not properly consider her ability to handle stress. "Testimony and medical evidence suggest some level of limitation in work due to stress from social

3

anxiety; however, the ALJ did not conduct any analysis on Plaintiff's ability to handle stress around others. Moreover, the consultative examiner opined Plaintiff would have stress limitations. The ALJ should have provided an explanation for rejecting the consultative examiner's limitations, and he should have conducted a stress analysis." (Dkt. No. 10-1 at 8.) Plaintiff then elaborates on the clues in the record that pointed to the need for a more extensive analysis:

> In the instant case, the ALJ gave weight to the opinion of the consultative examiner Dr. Billings. Tr. 17. In the opinion, Dr. Billings, opined Plaintiff would have moderate limitations appropriately dealing with stress. Tr. 327. Furthermore, the ALJ noted "her opinion [was] well supported by detailed clinical findings." Tr. 17. Despite this, he acknowledged that Dr. Billings was not Plaintiff's treating physician. Tr. 17. In response, he alleged to give Plaintiff "somewhat more credit" than the opinion. Tr. 17. Despite this, the ALJ accepted this opinion as the only opinion.
>
> * * * *
>
> While the ALJ purported to consider Dr. Billings, he never conducted a proper stress analysis. The ALJ should have provided specific findings on (1) the "nature" of Plaintiff's stress; (2) the circumstances that trigger it; or (3) how this affects her ability to work. *See Stadler*, 464 F.Supp.2d at 189. During treatment, it was noted that Plaintiff suffered from increased anxiety, and depression. Tr. 432, 437. In particular, her counsellor noted she struggled from social anxiety. Tr. 432. She testified to fear being away from her family. Tr. 134. She reported worrying, thinking about things, and needing to talk with her girlfriend or children. Tr. 144. Her treatment and testimony suggest a level of stress caused by social interaction. The ALJ should have provided some analysis into how this would affect her ability to work. *See Booker*, 2015 WL 4603958, at *3.
>
> The ALJ never addressed this in his decision. In fact, stress is not discussed in the decision. The ALJ only mentioned stress once, while repeating Dr. Billings's opinion. The ALJ should have made a specific finding on her ability to handle stress and how it would affect her ability to work. While the ALJ provided nonexertional limitations in the RFC, it is not entirely clear she could still perform work, as the RFC never properly considered the impact of stress from her social anxiety.

(*Id.* at 9, 11; *see also* Dkt. No. 13 at 2.) The Commissioner responds that plaintiff has understated the extent to which the ALJ did consider the issue of stress:

> Plaintiff complains that the ALJ "ignored" the portion of the opinion from Dr. Billings regarding stress. Pl. Brf. at 9. However, in describing the psychologist's

4

> report, the ALJ did set forth the portion of her opinion that stated Plaintiff might
> have moderate limitations dealing with stress (Tr. 17).
>
> The next assertion made by Plaintiff is that the ALJ gave weight to Dr.
> Billings' opinion but did not reconcile the portion of her opinion regarding stress.
> Pl. Brf. at 9-10. However, the ALJ gave that opinion partial, not significant or
> controlling weight (Tr. 17). In reviewing a disability claim, an ALJ is required to
> "weigh all of the evidence available to make an RFC finding that [is] consistent with
> the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The
> ALJ's RFC finding need "not perfectly correspond with any of the opinions of
> medical sources." *Id.; see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999) ("the
> ALJ's RFC finding need not track any one medical opinion").
>
> Further, what Dr. Billings actually stated in her opinion was "[s]he may have
> moderate limitations in appropriately dealing with stress and these may be based on
> mental symptoms that are not fully being treated" (Tr. 327). Thus, the psychologist's
> opinion about stress was equivocal—she used the word "may" twice with respect to
> stress limitations (Tr. 327). That phrasing stands in stark contrast to the unequivocal
> nature of her opinion regarding other mental abilities earlier in the same paragraph of
> her report where Dr. Billings stated "I do not see evidence of limitations in terms of
> the claimant's ability to …." (Tr. 327).
>
> In addition, the ALJ's decision also analyzed Dr. Billings report and stress at
> step three of the sequential analysis, (Tr. 14). Before specifically addressing that
> report, the ALJ pointed out that Plaintiff managed and lived independently (Tr. 14;
> see Tr. 326-27). The ALJ next considered the lack of any indication that her
> counselors expressed concerns about Plaintiff's ability to care for her needs (Tr. 14;
> see Tr. 432 (Ms. Rosendahl), 437 (same), 440 (same), 444 (same), 445-46 (Ms.
> Bloomquist), 450-51 (same), 457-58 (same)). The ALJ may rely not only on what the
> record says, but also on what the record does not say. *Dumas v. Schweiker*, 712 F.2d
> 1545, 1553 (2d Cir. 1983).

(Dkt. No. 12-1 at 22–23.)

The Commissioner has the better argument. The ALJ reviewed Dr. Billings's consultative psychiatric examination of September 30, 2014. Dr. Billings assessed plaintiff as having intact attention and concentration; intact memory skills; below average but possibly underestimated cognitive functioning; and good insight and judgment. [328–29.] Dr. Billings included a medical source statement that explicitly addressed stress: "She may have moderate limitations in appropriately dealing with stress and these may be the result of mental health symptoms that are not

5

fully being treated at this time. The results of the examination appear to be consistent with psychiatric problems, but, in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." [330.] The ALJ also reviewed the other clinical notes in the administrative record. [17.] The other clinical notes contain diagnoses of major depressive disorder but also indicate that plaintiff had organized thoughts and good judgment and insight. [*E.g.*, 441.] *Cf. Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) ("The ALJ recounted portions of Lin's examination that demonstrated, among other things, a cooperative demeanor, adequate manner of relating, appropriate eye contact, fluent and clear speech, coherent and goal-directed thought processes, intact attention and concentration, and good insight and judgment."). With the consultative examiner and the treating sources more or less consistent with each other, the ALJ reached the following conclusion about plaintiff's ability to handle stress:

> As for adapting or managing oneself, the claimant has mild limitations. The claimant has lived independently for many years. Counseling records expose no concerns on the part of treating clinicians relative to her ability to care for her needs. Indeed, those notes reflect that the claimant was able to independently dress, bath, groom herself; cook and prepare food, clean the home, shop for groceries and other necessities, attend doctor's appointments, take public transportation, and manage her money. (Exhibit 2F). The claimant's conservative course of psychiatric care is also consistent with mild limitation. Specifically, the claimant has not required any recent inpatient or emergency room care relative to her mental impairments. These factors eloquently argue against the existence significant difficulties with managing to stress or maintaining a stable home environment. For all these reasons, the undersigned finds that the claimant's mental impairments impose no more than mild limitations in the ability to adapt or manage herself.

[17.] *Cf. Lovelace v. Colvin*, No. 13-CV-400-JTC, 2014 WL 4057443, at *7 (W.D.N.Y. Aug. 14, 2014) ("Dr. Hill further indicated that although these activities may at times be compromised by symptoms of stress, anxiety, or depression, plaintiff's mental impairments did not appear to be significant enough to interfere entirely with her ability to function on a daily basis.") (internal quotation and editorial marks omitted).

6

Contrary to plaintiff's arguments, the ALJ also addressed the issue of stress with the vocational expert at the hearing. The ALJ first asked this question about "low-stress jobs":

> Q. Okay. Let me change the hypothetical a little bit. I wanted to add to the hypothetical what if the work would have to be in a low-stress job, would be defined as having only occasional decision making required and only occasional changes in the work setting, would that make any difference for the jobs you identified?
>
> A. No, those jobs could still be performed.

[160.] Then, as part of a series of questions exploring possible limitations, the ALJ asked the vocational expert—albeit in the context of light and not medium work—about social interactions:

> Q. Okay. I'm going to add to the hypothetical again—so again we're looking at light with all the additional limitations, but what if beyond that the worker could only have occasional interaction with the coworkers and the public. Would that make a difference?
>
> A. In terms of the light jobs, no, those jobs could still be performed.

[161.] The ALJ thus included the vocational expert in the exploration of plaintiff's ability to handle stress. The ALJ's actions make this case different from *Brink v. Colvin*, No. 1:14-CV-00940 (MAT), 2017 WL 2531711 (W.D.N.Y. June 12, 2017), in which no consideration of the medical opinions of record appears to have occurred, and in which no vocational expert was called.

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 12) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                __/s Hugh B. Scott_____
                                Hon. Hugh B. Scott
                                United States Magistrate Judge

DATED: August 9, 2019